## In re MARTOCELLO.

### Patent Appeal No. 3331.

Court of Customs and Patent Appeals.
Dec. 10, 1934.

BLAND, Associate Judge, dissenting in part.

See, also, 39 F.(2d) 700.

Wm. Steell Jackson, of Philadelphia, Pa. (Joseph Gray Jackson, of Philadelphia, Pa., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

Appellant filed his application in the United States Patent Office for a patent upon a drop tube and bracket. The said tube and bracket are for use in aërating the water in ice cans in the making of artificial ice. The Examiner rejected claims 1 to 7, inclusive, and allowed claim 8. On appeal, the decision of the Examiner was affirmed by the Board of Appeals. The claims were rejected by the Board of Appeals upon two references: Hutchinson, 1,573,714, February 16, 1926; Martocello, 1,739,978, December 17, 1929.

An appeal was prosecuted from the decision of the Board of Appeals to this court.

On the hearing of the matter here, the appellant moved to dismiss his appeal as to rejected claim 1. The other rejected claims are as follows:

"2. In ice can equipment, a drop tube, a drop tube bracket having a vertical hole, a ferrule adapted to receive an air nozzle and having a lower portion surrounded by the walls of the hole, spaced from them, and mounted upon the upper end of the tube and a head on the ferrule above the bracket too large to pass through the hole in combination with a laterally interlocking connection between the head and bracket.

"3. In ice can equipment, a bracket removably mounted upon the can having a vertical hole near the axis of the can and a downward depression near the hole, an air tube, and a head thereon adapted to receive an air nozzle, a low portion of the head being surrounded by the walls of the hole, spaced from them, and an upper portion thereof too large to pass through the hole in combination with a projection from the head into the depression, the sides of the depression and the projection forming a laterally interlocking connection between the tube and bracket adapted to prevent the tube from turning on its own axis during a twisting insertion of the nozzle into the head.

"4. In ice can equipment, a bracket removably mounted on the can and having a vertical hole near the can axis, an air tube

and a head on the air tube too large to pass through the hole having a lower portion surrounded by the walls of the hole, and spaced from them, in combination with lateral extensions upon opposite sides of the head and abutments on the bracket on each side of each extension for preventing the tube from turning on its own axis during a twisting insertion of an air nozzle.

"5. In ice can equipment, a bracket adapted to be removably·mounted upon a can and having a vertical hole near its outer end, an air tube, a ferrule threaded upon the top of the tube having lower portion threaded upon the tube and surrounded by the walls of the hole spaced from them and an upper portion too large to pass through the hole, a collar threaded upon the outside of the lower portion below the bracket and too large to pass through the hole, in combination with an extension from the head above the bracket and abutments on the bracket on opposite sides of the extension adapted to prevent the ferrule from turning during a twisting insertion of an air nozzle.

"6. In ice can equipment, a bracket adapted to be removably mounted upon the can and having a vertical hole near its outer end, an air tube, a ferrule having an upper portion too large to pass through the hole and a lower portion surrounded by the walls of the hole, spaced from them and rigidly connected to the tube in combination with a radially interlocking connection between the ferrule and bracket in which the interlocking members are normally out of engagement but engage laterally to prevent any angular movement of the ferrule upon its own axis as during the twisting insertion of an air nozzle into the ferrule.

"7. An ice can tube-supporting bracket having a hole in the end, a tube located within the hole, a support for the tube resting upon the upper surface of the bracket and having a lower part, the support extending down into the hole and spaced from the walls of the hole to allow swinging movement and a lug for the support fitting loosely into a wall connected with the hole and preventing turning movement of the support."

■ The disclosure of appellant has to do with a drop tube and bracket to hold the same, and describes an apparatus to inject air into ice cans during freezing. It shows a bracket to be attached to a can wall. A round hole ·with beveled edges extends through the end of the bracket, and through this hole the drop tube is suspended. The top of the tube is fitted with a ferrule, which prevents the tube from falling through the bracket opening, and the bottom of which ferrule is supported by the upper beveled edge of the bracket opening. A lock nut is adjusted below the bracket, around the drop tube, to prevent its removal from the bracket, while in use.

The head of the ferrule is circular in shape and has one or more lugs or lateral projections from its edge, each of which lugs fits into an opening in the side of the sustaining surface of the bracket. These lugs are normally spaced from the surrounding walls of the openings, so that play is allowed. Rotation of the tube is prevented by the contact of these lugs with the walls of said openings. The head of the tube is so mounted that the depending tube may swing or rock in any direction.

The patent to Hutchinson discloses a bracket supporting a drop tube. The only matter with which we are particularly concerned in this mechanism is the fact that Hutchinson shows, on two sides of the head of his drop tube, shoulders which fit into slots in the wall of the supporting bracket and which, as is stated in Hutchinson's specification, "will prevent rotation of the pipe and tend to hold the same firmly in vertical position."

The prior patent to Martocello, the other reference, shows a bracket and drop tube connection in which rotation of the drop tube is prevented by means of a ferrule flattened on two sides, fitting within a rectangular bracket opening. Several forms are shown in which this fitting may be mounted. The tube may be so depended that it will swing or rock longitudinally of the can, and a form is shown in which it will swing or rock transversely of the same. This is accomplished by flattening the sides of the ferrule to adapt it to swing in either desired way. In all features, except as to this one, the disclosure is the same as in the present application.

In examining the claims now before us, it becomes apparent that, as to claims 2, 3, 4, and 5, no error appears in the rejection of said claims by the Board of Appeals. In claim 2, "a laterally interlocking connection" is plainly shown by appellant's former patent. In claim 3, the language, "the projection forming a laterally interlocking connection between the tube and bracket," reads directly upon the reference Hutchinson. The same is true of similar language appearing in claims 4 and 5.

■ Claim 6 is distinguished by this language: "In which the interlocking members

are normally out of engagement but engage laterally to prevent any angular movement of the ferrule upon its own axis."

It is plainly shown in appellant's present disclosure that his lugs, which engage depressions in the wall of the bracket, are normally out of engagement with the walls of the bracket which inclose them. The query is whether the same showing can be said to have been made in the reference patents. It certainly is not shown in the Hutchinson patent, rigid engagement being shown there. The solicitor for the Patent Office contends that such a showing is made in the Martocello reference patent, and that figures 14 and 10 thereof show spaces between the flattened sides of the ferrule and the opposite walls of the bracket where the same are not in contact, and which will permit a rocking laterally.

It is true, the said drawings appear to show such a space. However, nothing is recited in the specification or claims relative to this feature. It appears, from a reading of portions of the specification, that, in flattening two sides of the head of the ferrule in this disclosure, and by a proper formation of the bed upon which the ferrule rests, it was intended to permit a swinging of the tube in one direction, either longitudinally or laterally of the can. This appears by reference to the following language appearing in the specification:

"In all of the other forms the rotative position of the tube in the can is set by making the connections between the seat and tube fitting rectangular, giving a definite predetermined direction to the air discharged into the can. This is done more or less at the expense of freedom of swinging movement. * * *

"In this form the tube does not have free sliding movement in any direction and will not swing except as it may rock either longitudinally of the can or transversely of the can. * * *

"The movements of the tubes in planes parallel with the length of the can are thus facilitated. * * *

"The forms which have only partial swinging tube movement restricted in a plane or planes or which do not move freely have an advantage with some customers in that where the can slopes the tube will assume a position intermediate between the true vertical position and the vertical axis of the can."

These excerpts from the specification, together with the absence of any specific statement of a spaced relation between these mem-

bers, and the absence of any claim resting on this feature, lead to the conclusion that whatever showing there may have been in said drawings of such spaced relation, so far as the subject-matter of the claims herein involved is concerned, was an accidental showing, was not such a showing as would make appellant's invention obvious to one skilled in the art, and was not an anticipation, within the doctrine announced in Re Bager et al., 47 F.(2d) 951, 18 C. C. P. A. (Patents) 1094.

As to claim 7, much the same comment may be made. Certainly the Hutchinson reference did not disclose the subject-matter of this claim, as it provided for a structure which permitted no rocking, and, on the contrary, secured a close and rigid position of the drop tube. Neither is there anything in the former Martocello patent, the reference here, which discloses "a lug for the support fitting loosely into a wall connected with a hole." Being of opinion that the said claims 6 and 7 are not anticipated by the references, it follows that they should be allowed.

The decision of the Board of Appeals is affirmed as to claims 2, 3, 4, and 5, and is reversed as to claims 6 and 7. The appeal is dismissed as to said claim 1.

Modified.

BLAND, Associate Judge, dissents as to the holding of the court on claims 6 and 7.